UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

   Plaintiff,

v.              Case No. 17-cr-180-pp

JOHN T. EVANS,

   Defendant.

---

**ORDER ADDRESSING DEFENDANT'S REPLY (DKT. NO. 128) AND CORRECTING ERROR IN JUNE 30, 2020 ORDER (DKT. NO. 126)**

---

On June 30, 2020, the court issued an order denying the defendant's letter motion for compassionate release from custody. Dkt. No. 126. A little over a week later, the court received from the defendant his reply to the government's response to his motion. Dkt. No. 128. The court did not address that reply in its order, since the court received it after the court had issued its order.

The defendant stated that in the week since he'd received the government's response, FCI Sandstone—the facility where he is incarcerated—had reported its first confirmed case of the coronavirus. Id. at 1. The court is sorry to hear that there has been a confirmed case at Sandstone. The court checked the COVID-19 page of the BOP web site on July 20, 2020—there remains, not quite two weeks after the court received the defendant's reply, only one confirmed case of the virus at Sandstone. https://www.bop.gov/

1

coronavirus/. The defendant understandably is concerned. But as the court observed in its June 30, 2020 order, the court has denied motions from defendants who are in facilities where there have been hundreds of confirmed cases. Dkt. No. 126 at 10. Even with a confirmed case at Sandstone, the defendant has less exposure than these other defendants.

The defendant argues in his reply that "if an inmate with a chronic medical conditions that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the standard of 'extraordinary and compelling reasons.'" Dkt. No. 128 at 1. The defendant does not point the court to any cases that say that, or any law that says that. Courts decide whether a defendant's medical conditions constitute "extraordinary and compelling circumstances" on a case-by-case basis, and factor in things like the defendant's age and the severity of his condition. The court explained in its June 30, 2020 order that the CDC said moderate to severe asthma "may" put someone at greater risk, but that other organizations question that conclusion. Dkt. No. 126 at 8-9.

The government pointed out that the defendant had not had an asthma attack since 2017; the defendant responds that, like sickle cell, someone with asthma is not constantly in crisis. Dkt. No. 128 at 2. He observes that an asthma attack can be triggered at any moment. Id. The court is no expert, but it has no reason to doubt the defendant. The point the government was trying to make, the court believes, is that someone who hasn't had an asthma attack for years likely does not have what would be categorized as "severe" asthma. In

2

an article in American Family Physician, the authors (professors at the University of Virginia School of Medicine) defined "intermittent" asthma as symptoms of fewer than two days a week, fewer than two nighttime awakenings per month and use of something like an inhaler (a "short-acting beta agonist") less than two days per week. In contrast, they described "persistent-moderate" asthma has having daily symptoms, nighttime awakenings of once per week and daily use of an inhaler, and "persistent-severe" asthma as having symptoms throughout the day, nighttime awakenings of as many as seven per week and use of an inhaler several times per day. https://www.aafp.org/afp/2009/0501/p761.html. The CDC says that having "moderate-to-severe" asthma "may" increase one's risk for severe illness. Someone who has not had an attack in over two years is unlikely to have moderate to severe asthma, and even a person with moderate to severe asthma may not be more at risk of severe illness than someone who does not have asthma—especially an otherwise healthy thirty-nine-year-old.

The defendant disputes the government's assertion that he didn't tell the presentence writer about his asthma. Dkt. No. 128 at 2-3. He reminds the court that at his change-of-plea hearing, he told the court that he used an inhaler, and thinks he could not possibly have neglected to tell the presentence writer about his asthma only a few weeks later. Id. The court does not believe that the defendant is lying about his asthma, and noted in the June 30, 2020 order that the defendant *had* mentioned the asthma in the bond study. Dkt. NO. 126 at 8. The court speculated that the defendant may have forgotten to

mention the asthma to the presentence writer because it had been a while since he'd had an attack but noted that the BOP records confirmed that he does have asthma. Id. at 8-9. The court does not dispute that the defendant has asthma, whether he mentioned it to the presentence writer or not.

The government stated that the defendant had appealed his sentence. The defendant agrees but points out that he wasn't accusing the court of making an error. Dkt. No. 128 at 3. He says he was appealing his lawyer's work on his behalf. Id. The question of whether the defendant appealed is, to the court, irrelevant, and the court did not mention that fact in its June 30, 2020 order. A defendant has a right to appeal his sentence; the fact that he does so does not mean anything other than that he thought something was done incorrectly. The court did not deny the defendant's compassionate release motion just because he appealed, and it would have been wrong of the court to do so if it had.

The defendant disputes the government's assertion that he has two years left to serve on his sentence. Dkt. No. 128 at 3. He says he is only eighteen months away from being eligible for pre-release home confinement. Id. at 3-4. The court's June 30, 2020 order acknowledged that the BOP shows the defendant is eligible for home confinement pre-release as of February 8, 2022— just under nineteen months from now. Dkt. No. 126 at 5.

The defendant argues that he is not a danger to the community, because he hasn't had any disciplinary violations while in custody and his PATTERN score shows that he is at a low risk to reoffend. Dkt. No. 128 at 4. The question

4

of whether someone who committed serious, dangerous crimes almost forty months ago is still dangerous after being in prison for several years is a difficult one to answer. Some defendants might act out during their time in prison, committing acts of violence against fellow inmates and staff. It would be hard to argue that that person was not a danger to the community. It is harder to answer that question for someone like the defendant. The court recalls that the defendant did not agree with the government about his role in the robberies. There was no allegation that he went into any of the places robbed— the government alleged that the defendant drove to another state to pick up his co-defendants, drove them to the stores they robbed (and away after the robberies) and provided them with the gun they used, and based on this, the court found that the defendant was a leader or organizer. The court also found that the defendant had obstructed justice by getting a co-defendant to write an exonerating letter for him, while the defendant disputed this assertion. And the court realizes that the defendant did not have any criminal history to speak of prior to these offenses. The court would like to hope that the defendant would not do anything like this again upon his release.

      The more relevant question may be whether release would frustrate the goal of punishment, rather than whether the defendant is a danger to the community. The court stated in its June 30, 2020 order that releasing the defendant from a sixty-six-month sentence (a below-guidelines sentence) after serving only just over two and a half years would trivialize the offenses. Dkt. No. 126 at 11. The defendant argues that releasing him would not mean

5

Case 2:17-cr-00180-PP   Filed 07/21/20   Page 5 of 7   Document 130

terminating his sentence—he still would have to serve three years of supervised release under strict conditions. Dkt. No. 128 at 4. The defendant is correct that he still would have to serve his term of supervision. But the court continues to believe that release at this time—given the defendant's relative good health and incarceration in a facility that has only one confirmed case of the virus—is not appropriate under the statute given the seriousness of his offenses and the amount of time he has served.

The defendant concluded his reply by reminding the court that many incarcerated individuals—some who had no underlying health conditions—have succumbed to COVID-19, and that the possibility of his contracting the disease caused by the coronavirus is an extraordinary and compelling reason justifying release. Id. at 5. The court agrees with the defendant that it did not impose a death sentence—not on him, not on any defendant it has sentenced. But as the court stated in its June 30, 2020 order, if fear of being infected or being sick were enough to constitute an extraordinary and compelling reason to release a defendant, all prisons and jails would be empty.

After the defendant received the court's June 30, 2020 order, he wrote the court a letter, pointing out an error the court had made in ruling on his motion to correct the BOP's sentence calculation. Dkt. No. 129. In the court's June 30 order, the court noted that the defendant was arrested on December 1, 2017. Dkt. No. 126 at 2. The court then indicated that "although [the defendant] was arrested on December 1, he did not make his initial before the magistrate judge until December 4 . . . ." Id. at 3, citing Dkt. No. 4. The

6

defendant's most recent letter says that this is not true—that he appeared before Magistrate Judge Duffin on the same day that he was arrested. Dkt. No. 129. The defendant is correct—the court's reference to December 4 was an error. The court minutes from the defendant's first appearance in federal court stated that his initial appearance took place on "December 1, 2017 at 4:15 p.m." Dkt. No. 4 at 1. This is the same day that Special Agent Erin Lucker signed the warrant return. Dkt. No. 3. While the court has no evidence that the defendant was arrested November 30, 2017, as he argued in his motion to correct the BOP's sentence calculation (dkt. no. 114), the defendant is correct that all the documents in the court's docket show that the defendant was arrested and first appeared in court on **December 1, 2017**.

Dated in Milwaukee, Wisconsin this 21st day of July, 2020.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**