UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                          Case No. 17-cr-180-pp

JOHN T. EVANS,

        Defendant.

**ORDER DENYING THIRD MOTION FOR COMPASSIONATE RELEASE SENTENCE REDUCTION (DKT. NO. 146) AND GRANTING MOTION REQUESTING A JUDICIAL RECOMMENDATOIN CONCERNING LENGTH OF RESIDENTIAL RE-ENTRY CENTER (RRC) PLACEMENT (DKT. NO. 147)**

      Since November 15, 2018, when the court sentenced the defendant to serve 66 months in custody following his plea to participating in Hobbs Act robberies of two mobile phone stores, the defendant has filed three motions for compassionate release. He filed the first one on June 3, 2020, not quite three months after it became clear that the COVID-19 pandemic was a serious threat to American public health. Dkt. No. 117. The court denied the motion, because the only underlying condition the defendant identified that allegedly made him more susceptible to severe illness if infected was asthma; he had not had an asthma attack in some time, his asthma was not moderate to severe and was controlled with an inhaler. Dkt. No. 126 at 8-9.

      Six months later, on December 29, 2020, the court received a second motion from the defendant. Dkt. No. 131. The court denied this motion, again noting that the defendant had not demonstrated that he was any more

1

vulnerable to severe illness if infected than any other incarcerated person. Dkt. No. 140 at 3-4. By that time, the defendant had contracted the virus and been diagnosed as asymptomatic (though he reported body aches, shortness of breath and headache). Id. at 3.

On August 10, 2021, the court received a third motion from the defendant. Dkt. No. 146. The defendant cites the highly contagious Delta variant. Id. at 1. He indicates that he has been prescribed a stronger steroid for his asthma and that he uses it daily because of his previous infection with COVID-19. Id. He explains that, after not getting into any trouble for his entire incarceration, he recently received an incident report for giving another incarcerated person his contact information; he is appealing that violation. Id. at 2. He reminds the court that he is nearing the end of his sentence and says he may get some additional good-time credit for completing an intensive auto shop program. Id. The defendant anticipates that the government will oppose the sentence reduction because the defendant refused the offer of a COVID-19 vaccine; he explains that he refused the vaccine because he was told he'd get one vaccine, but then the staff handed out information saying they would be administering a different one. Id. at 3. He argues that even if he had agreed to be vaccinated, that is no guarantee he would not be reinfected. Id.

The defendant anticipates that the government will say that he is "steady breaking the rules" while in custody; he counters by asking why he would stay out of trouble for four years only to wait until the very end of his sentence to commit a violation. Id.

2

Case 2:17-cr-00180-PP    Filed 09/01/21    Page 2 of 7    Document 151

Finally, he asks that if the court denies his motion, it grant his motion for a judicial recommendation that the BOP grant him the maximum amount of time allowable (up to one year) in a halfway house. Id. at 3-4.

The defendant attached to his motion a "Fact Sheet for Recipients and Caregivers" explaining the emergency use authorization for the Pfizer-BioNTech vaccine.[1] Dkt. No. 146-1 at 1-6. He also attached the Discipline Hearing Officer Report regarding the disciplinary violation he mentioned. Id. at 7-9. It shows that prison staff concluded that the defendant had possessed a cell phone—which the prison classifies as a "hazardous tool"—even though he and the incarcerated person who claimed to have used the phone denied that fact.

As the defendant anticipated, the government opposes the motion. Dkt. No. 150. The government provided a portion of the defendant's medical records indicating that on February 4, 2021, the prison offered the defendant the Moderna COVID-19 vaccine, but that he refused it. Dkt. No. 150-1. (The court assumes, from the fact that the defendant attached to his motion an informational brochure about the Pfizer-BioNTech vaccine, that when he says he was told he'd be getting one medicine but then was offered another, he means that he was told he'd be given the Pfizer vaccine but ended up being offered the Moderna.)

---

[1] On August 23, 2021, the U.S. Food and Drug Administration granted final approval of the Pfizer-BioNTech vaccine for use in individuals sixteen and older; the vaccine remains available under the emergency use authorization for individuals twelve through fifteen and for boosters for immunocompromised persons. https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.

The government cites two recent cases from the Seventh Circuit Court of Appeals, United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. July 21, 2021) and United States v. Ervin, ___ F. App'x ___, 2021 WL 3439014 (7th Cir. Aug. 5, 2021), in which the Seventh Circuit has held that an incarcerated person who declines to be vaccinated cannot "plausibly" argue that his or her virus risk poses an extraordinary and compelling circumstance. While the Erwin court hinted at the possibility that an incarcerated person who is unable to be vaccinated for health reasons, or an incarcerated person to whom the institution did not offer the opportunity to be vaccinated, might still present extraordinary circumstances, the defendant does not fall into either of those categories. The Seventh Circuit—the court above this court, whose rulings this court must follow—has held that an incarcerated person who declines vaccination faces a "self-incurred" risk of being infected. Broadfield, 5 F.4th at 803.

The defendant asserts that he is now on a stronger asthma medication and that he takes it daily. He has provided no medical records in support of this argument. The court noted in its previous decisions that the Centers for Disease Control has indicated that those with moderate to severe asthma "could be" at greater risk for more severe illness if infected. See, *e.g.*, Dkt. No. 126 at 9. Compared to defendants with kidney disease, immune deficiency disorders, cancer and other co-morbidities that make a person much more vulnerable to severe illness if infected, the defendant still has not shown that his health condition puts him at a higher risk that other incarcerated persons.

The defendant expresses concern about the more contagious Delta variant and argues that even if he'd been vaccinated, there's no guarantee that he could not be reinfected. The Delta variant is more contagious and the defendant is correct that no vaccine is 100% effective. There have been, and continue to be, what are known as "break-through" infections, where a vaccinated person contracts COVID-19. The CDC explains:

> COVID-19 vaccines are effective and are a critical tool to bring the pandemic under control. However, no vaccines are 100% effective at preventing illness. Some fully vaccinated people will get sick, and some will even be hospitalized or die from COVID-19. However, there is evidence that vaccination may make illness less severe for those who are vaccinated and still get sick. The risk of infection, hospitalization, and death are all much lower in vaccinated compared to unvaccinated people.

https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html. As for the Delta variant itself, the CDC states that vaccines are "highly effective at preventing severe disease and death, including against the Delta variant," and warns that "[t]he greatest risk of transmission is among unvaccinated people who are much more likely to get infected, and therefore transmit the virus." https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html. While the defendant's concerns about the Delta variant are valid ones, he had the ability to mitigate the risk to himself by getting vaccinated. Again, the defendant has not demonstrated extraordinary and compelling circumstances justifying a sentence reduction.

The court should note that contrary to the defendant's expectation, the government made no mention of the alleged disciplinary violation. The court sees no reason to take that into account in its decision; from the document the

5

defendant provided, there appears to be some question about whether the defendant even committed the violation, and if he did, the violation seems a minor one. The court has no reason to believe that the defendant has not been, as he describes himself, a model incarcerated person. He has completed several programs, using his time in prison wisely. The sole basis for the court's denial of the defendant's third motion for compassionate release is that the defendant has not identified extraordinary and compelling reasons justifying a reduction in his sentence.

As for the defendant's request that the court recommend to the Bureau of Prisons that he receive the maximum time in residential reentry, the government argues that the defendant has provided no legal authority that allows the court to make a sentencing recommendation once the sentencing hearing is over. Section 3582(c) of Title 18 says that a court may not modify a term of imprisonment once it is imposed. Courts differ on the question of whether recommending that the BOP give a defendant the maximum term allowed in residential reentry is a "modification" of a sentence. Regardless, it is up to the BOP to decide when to place an inmate in residential reentry. That decision, to the extent the court understands it, is based on many factors, and some of them have nothing to do with the defendant. The BOP must take into account how many beds are available at the RRC in the district where the defendant will be released, for example. But it seems to this court that the defendant likely would be a good candidate for the maximum allowable term, given his reported record of good conduct and the positive way he has chosen

6

Case 2:17-cr-00180-PP    Filed 09/01/21    Page 6 of 7    Document 151

to spend his time in custody. Without ordering a modification of the defendant's sentence, the court will grant the defendant's request to recommend that the BOP grant the defendant the maximum amount of time in residential reentry.

The court **DENIES** the defendant's third motion for compassionate release. Dkt. No. 146.

Without ordering a sentencing modification, the court **GRANTS** the defendant's motion for a recommendation, and **RECOMMENDS** to the Bureau of Prisons that it grant the defendant the maximum allowable time in residential reentry. Dkt. No. 147.

Dated in Milwaukee, Wisconsin this 1st day of September, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**